WINDSOR,
February,
1832.

S. Treasurer
vs.
Kelsey et al.

————~~~◎~~~————

HENRY BRACKETT and his wife, CLARA BRACKETT vs. DANIEL WAITE, Jr. and J. MOULTON.

Where one in prosperous circumstances, and not much embarrassed with debts, in consideration of natural love and affection, made a voluntary conveyance to his daughter of a portion of his estate, leaving amply sufficient to pay all he owed,—it was held that such conveyance was good and valid against a subsequent mortgage given to secure a debt existing previous to the voluntary conveyance.

If a voluntary conveyance be good and valid in law at the time it is made, it will not be rendered fraudulent by subsequent events by which the grantor becomes insolvent.

This was an action of *ejectment* for certain lands in Braintree. Plea, the *general issue.* At the trial in the county court it appeared in evidence, that on the 18th day of May, 1830, the premises in question were owned by one William Ford, who on the same day, voluntarily conveyed them to his daughter, *Clara Brackett,* one of the plaintiffs. The deed expressed a consideration of three thousand dollars, though it appeared to have been given in consideration of natural love and affection only. On the 28th day of July, 1830, Ford executed a mortgage deed of the same premises to the defendant, *Waite,* to secure him for certain promisory notes executed to *Waite* previous to the conveyance by Ford to his daughter, amounting to about one thousand dollars. Soon after the execution of the mortgage deed, Ford died, and the defendant, *Waite,* subsequently procured from Ford's administrator a deed of the equity of redemption. The mortgage deed to *Waite* was recorded the same day on which it was executed ; but the deed to *Mrs. Brackett* was not recorded, nor lodged for record, till the 8th day of November following. The plaintiffs offered evidence tending to prove that the mortgage deed to *Waite* was executed by Ford, and sent to the town clerk's office for record, in the absence of *Waite,* and without his knowledge ; that soon after the messenger was sent, with the mortgage, to the town clerk's office, *Waite* returned, and was informed of what had been done, and at the same time was told that it was suspected the deed to the plaintiff, *Mrs. Brackett,* was void ; that *Waite* expressed his satisfaction at what had been done with regard to the mortgage deed. The plaintiffs also produced evi-

Orange,
February,
1832.

Brackett et ux.
vs.
Waite et al.

dence tending to prove that Ford, at the date of the deed to his
daughter, *Mrs. Brackett*, and up to the 16th July, 1830, owned
estate to the value of more than sixty thousand dollars. To ob-
viate the effect of this evidence, the defendants adduced testimony
tending to show, that on the 26th July, 1830, property belong-
ing to Ford, to the value of about fifty thousand dollars, was de-
stroyed by a freshet; that he then immediately became insolvent,
and afterwards so died. The defendant also produced evidence
tending to prove, that Ford, at the time of the conveyance to *Mrs.
Brackett*, was indebted to *Waite* and others to the amount of
sixteen thousand dollars. The plaintiffs requested the court to
charge the jury, that if they believed Ford, on the 19th of May,
1830, was solvent, and was owner of attachable property, amply
sufficient to secure all his debts, the deed of that date to plaintiff,
*Mrs. Brackett*, was valid, though made on the consideration of
natural affection only; and that the subsequent losses and insol-
vency of Ford would not make said deed void as to *Waite*. But
the court instructed the jury, that *Waite* was to be viewed as a
creditor of Ford, whose debt existed before the 19th of May,
1830, and that, as to such creditors, the deed to *Mrs. Brackett*
made for natural love and affection only, was void, though the
grantor, at the time, was solvent, and had visible property amply
sufficient to pay all his debts, if he afterwards became insolvent.
The jury returned a verdict for the defendants. The plaintiffs
filed exceptions to the charge to the jury, and also to a decision
of the court admitting in evidence the mortgage deed and notes;
whereupon the cause was brought up to this Court on a motion
for a new trial.

*Mr. Collamer, for the plaintiffs.*—The mortgage to *Waite*, not
having been received by him, and being yet within the control of
Ford, when *Waite* was informed of the deed to *C. Brackett*,
*Waite* took it subject to *Brackett's* deed; and the question is, was
that void as to *Waite* ?

I. *Waite* claims as purchaser, and insists that the previous vol-
untary conveyance is void as to a subsequent purchaser for good
consideration, even with notice. 1st. In answer to this, it is con-
tended for the plaintiffs, that *Waite* cannot claim as a creditor and
purchaser by the same conveyance. A mortgage is a mere *secu-
rity* for the debt, and the mortgagee yet a creditor. 2nd. As to
the conveyance from the administrator of the equity of redemp-
tion, that is not such a purchase as enables the purchaser so avoid

the previous voluntary conveyance.—*Rob. on Fraud*, 30–40.
The previous voluntary conveyance is made void as to subsequent
purchasers by relation.    The subsequent conveyance by the gran- Brackett et ux.
*vs.*
Waite et al.
tor is taken as evidence of his previous fraudulent intent, and so
his first conveyance rendered void.    But a sale by his adminis-
trator cannot furnish such evidence.    3rd.  The plaintiffs insist
that the whole of the doctrine for which the defendants contend
is founded on the 27th of *Elizabeth,* which has not been here
adopted.—4 *Cowen's Rep.* 599, *Jackson ex dem. Steward* vs.
*Town*.    That statute, and the decisions upon it, is one of those
artificial contrivances to which England has resorted as a guard
against fraud in a particular form.    It creates a conclusive legal
presumption to guard subsequent purchasers.    In this country no
such evil exists.    Security is found in our registry system, and,
therefore, that statute has never been here adopted.    That statute
has none of those words, "declare," &c., on which the courts in
England have ever laid stress, as making the 13th of *Elizabeth* an
act *declaratory*.

   II. The main question in this case, and the one on which the
case was put by the court is, was the voluntary conveyance abso-
lutely *void* as to creditors?    1st.  The plaintiffs insist that the
statute of 13th of *Elizabeth* differs from ours in this : The statute
of Elizabeth declares the sale void, as to all whose rights "*are,
shall, or might be*" affected.—*Rob. on Frauds*, 3.    Ours affects
those only *intended* to be affected.    2nd.  Voluntary conveyances
will be found, on examination into all the authorities, never, even
in England, to have been holden as more than *presumptively*
fraudulent as to creditors, not absolutely *void*, as decided in this
case by the court.    Such conveyances have only been set aside
in chancery when unexplained ; they have not been treated as
*void*.    The subsequent nonpayment of his debts by the grantor
has been coupled with his previous voluntary conveyance, and
made presumptive evidence of fraudulent intent in that convey-
ance.    For if the conveyance was good when made, it is ever
good.    Still, these subsequent conveyences are subject to exam-
ination ; and if it can be shown that, when the conveyance was
made, enough of property remained for creditors, and thus the in-
tent of the grantor, at that time, shown to be fair ; and if the subse-
quent non-payment can be explained, as not resulting from his acts
intended from the beginning, but as arising from calamities which
no human foresight or prudence could have anticipated, or avoid-
ed, then this presumption is rebutted.    This has been so holden

ORANGE,
*February,*
1832.

Brackett et ux.
*vs.*
Waite et al.

after the most full investigation of all the authorities, English and American.—8 *Cowen's Rep.* 406, *Seward* vs. *Van Wyck*; 11 *Wheaton* 214, *Jackson ex dem. Steward* vs. *Town*; 4 *Cowen,* 599; *Newland on Con.* 384. Such deed is good against subsequent purchasers; and good against creditors, unless the deed deprive them of an ample fund to pay their debts, and the words in the books, "*being indebted at the time,*" mean insolvent. 3rd. If the *deed* does not deprive the creditors of funds for collecting their debts, it is not fraudulent when made; and the happening of contingencies subsequently, cannot divest the title unless they be of such a character as to furnish evidence of fraudulent intent when the conveyance was made.—1 *Aik. Rep.* 116, *Durkee* vs. *Mahony*. If this were otherwise, every gift of real or personal property would be, at the time void as to creditors, whatever were the circumstances of the giver.—4 *Mass. Rep.* 354, *Drink-water* vs. *Drinkwater*; 3 *Mass.* 573. 4th. Even in relation to 27th *Elizabeth,* which has been carried much farther than the 13th, and made more conclusive and imperative, the weight of authority is, that the voluntary conveyance is merely presumptively fraudulent against subsequent purchasers, and that this presumption is subject to be explained.—*Roberts on Frauds,* 17, 61, 69, *where the old authorities are collected.* 5th. It yet remains a question whether under our statute, our courts will create even a presumption of fraud as to voluntary conveyances; but most clearly they will not go, not only to do this, but even exceed the courts in England, deciding on a much stronger statute, and hold that such conveyances are *ipso facto* conclusively fraudulent.

*Mr. Upham, for defendants.*—The mortgage deed to the defendant, *Waite,* having been first recorded, defeats the deed under which the plaintiffs claim. But to avoid this difficulty the plaintiffs insist that *Waite* had notice of their unrecorded deed at the time he took his mortgage, and, for that reason, cannot hold the lands against them. The defendants in reply, say, that the evidence given by the plaintiffs, upon this point, had no tendency whatever to show notice in fact to *Waite* of their unrecorded deed at the time he received his mortgage. The law goes upon the ground that *express* notice of a prior conveyance unrecorded, is equivalent to fraud, and for that reason avoids the subsequent recorded deed.—*D. Chip. Rep.* 42, 49; 8 *Johns. Rep.* 137; 3 *Ves. Jr.* 478; 3 *Atk. Rep.* 654; 1 *Burr. Rep.* 474; *Narcross* vs. *Widgery,* 2 *Mass.* 509; *McMechan* vs. *Griffing,* 3 *Pick. Rep.* 149; *Pendleton* vs. *Button,* 3 *Con. Rep.* 406.

ORANGE,
February,
1832.

Brackett et ux.
vs.
Waite et al.

2. We insist that the plaintiffs' deed for several reasons is fraudulent and void against the creditors of the grantor. *First.* It expresses a pecuniary consideration of $3000, when in fact nothing was paid, or secured to be paid, by the grantee, for the lands conveyed. The only consideration set up in support of the deed is natural love and affection. The deed on the face of it appears to have been executed upon a fair purchase for an adequate price, and to that test the inquiry must be confined. A deed brought forward, as founded on a valuable consideration, cannot be set up as a gift or voluntary conveyance. The party is bound by the consideration alleged. This position is well supported by the following authorities, viz.—*Hildreth* vs. *Sands,* 2 *Johns. Ch. Rep.* 43 ; *Watt* vs. *Grove,* 2 *Sch. & Lef. Rep.* 500 ; *Marigley* vs. *Hance,* 7 *Johns. Rep.* 341 ; *Jackson* vs. *Delaney,* 4 *Cowen's Rep.* 427 ; 2 *Ves.* 628. *Second.* Had the deed expressed the real consideration upon which it was founded, to wit, natural love and affection, it would have been void under the statute of the 13 *Eliz. c.* 4, against all the creditors of the grantor, both antecedent and subsequent. It appears from the bill of exceptions that Ford, at the time he made this voluntary conveyance to his daughter, *Clara Brackett,* was in debt to the defendant, *Waite,* and others, to the amount of $16,000. This fact, if the authorities are to be relied upon, rendered the conveyance void against subsequent, as well as antecedent, creditors.—*Russell* vs. *Hammond,* 1 *Atk. Rep.* 13 ; *Walker* vs. *Burrows, Id.* 93 ; *Lord Townsend* vs. *Windham,* 2 *Vern.* 10 ; *Hildreth* vs. *Sands,* 2 *Johns. Ch. Rep.* 48 ; *Reade* vs. *Livingston,* 3 *Johns. Ch. Rep.* 481. The doctrine we contend for is supported in all its plenitude of analogies and consequences by the following cases, viz. *Tayler* vs. *Jones,* 1 *Atk. Rep.* 600 ; *Middlecome* vs. *Marlow,* 2 *Atk.* 520 ; *Stileman* vs. *Ashdown,* 2 *Atk.* 480 ; *St. Armand* vs. *Barbard, Comyn's Rep.* 255 ; *Stephens* vs. *Olive,* 2 *Bro.* 90 ; *Lush* vs. *Wilkinson,* 5 *Ves.* 387 ; *Shaw* vs. *Standysh,* 2 *Vern.* 326 ; *Naim* vs. *Prouse,* 6 *Ves.* 759 ; *White* vs. *Sansom,* 3 *Atk.* 410 ; *Fitzer* vs. *Fitzer,* 2 *Atk.* 511 ; *Ridney* vs. *Caussmaker,* 12 *Ves.* 136 ; *Hollaway* vs. *Millard,* 1 *Maddock's Ch. Rep.* 414 ; *Bayard* vs. *Hoffman,* 4 *John. Ch. Rep.* 450 ; *Bennett* vs. *Bedford Bank,* 11 *Mass. Rep.* 421.

3. The plaintiffs object to the validity of our mortgage deed, because it does not accurately describe the notes intended to be secured by it. In the first place, we maintain, that it is not essential to the validity of a mortgage that it should truly state the

ORANGE,
February,
1832.

Brackett et ux.
vs.
Waite et al.

debt which it is intended to secure.—*Vide Shirras et al.* vs. *Craig* and *Mitchel*, 7 *Cranch's Rep.*34. In the second place,we say,that the notes formed no part of the defendants' title, and it was not necessary to produce them at all on the trial. In fact, they were not produced for the purpose of making out the defendants' title under the mortgage deed, but for the purpose of showing that the debt secured by the mortgage existed before the execution of the plaintiffs voluntary deed. In the third plea, we insist, that the plaintiffs have no right under their voluntary and fraudulent deed, to impeach the validity of our mortgage, on the ground of a clerical mistake in describing the notes intended to be secured by it. Ford, himself, could not do it, and we think the plaintiffs stand on no better ground than their grantor. The defendants are in posses-sion of the lands sued for under their deed, and the plaintiffs can-not oust them without making out a good title in themselves. They must recover upon the strength of their own title, not upon the weakness of ours.—5 *Term Rep.* 110 ; 2 *Term Rep.* 684 ; 1 *East's Rep.* 246.

4. Defendants insist that they can hold the lands in question by virtue of their deed from the administrators on Ford's estate against the plaintiffs' voluntary deed. Under this deed they claim to hold the lands conveyed, as *bona fide* purchasers, against the voluntary grantees of Ford. The administrators, it is true, sold the lands in question to the defendant, *Waite*, at public vendue, for a small sum ; but that does not prejudice his title. His claim is as good under this deed as it would have been under an absolute convey-ance from Ford himself before his decease.—*Vide Hildreth* vs. *Sands*, 2 *John. Ch. Rep.* 50. It was holden by *Lord Ellenbo-rough*, in the case of *Doe. ex dem. Otley* vs. *Manning*, (9 *East Rep.* 59,) that a voluntary conveyance of lands made in consid-eration of natural love and affection, is void as against a subse-quent purchaser for a valuable consideration, though with notice of the prior conveyance, and though the grantor had other prop-erty at the time of such conveyance, and did not appear to be then indebted, and there was no fraud in fact in the transaction : for the law, which is in all cases the judge of fraud and covin arising out of facts and intents, infers fraud in this case, upon the con-struction of the statute of the 27th *Eliz. c.* 4. In further support of this principle we refer to the following cases, viz. *Colville* vs. *Parker, Cro. Jac.* 158 ; *Rodgers* vs. *Langhue*, 1 *Sid.* 133 ; *White* vs. *Hussey, Precedents in Chancery*, 14 ; *Tankins* vs. *Ennis*, 1 *Eq. Cas. Abr.* 334 ; *White* vs. *Sansom*, 3 *Atk.* 412 ;

*Lord Townsend* vs. *Windham*, 2 *Ves.* 10 ; *Roe* vs. *Milton*, 2 <span style="float:right">ORANGE,</span>
*Wils.* 356 ; *Goodright* vs. *Masses*, 2 *Sir Wm. Black. Rep.* <span style="float:right">February,<br>1832.</span>
1019 ; *Evelyn* vs. *Templar*, 2 *Bro. Ch. Cas.* 148 ; *Doc ex*<sub>Brackett et ux.</sub>
*dem. Bothell* vs. *Martyn*, 1 *Bos.* and *Pul. N. P.* 332 ; *Nunn* <span style="float:right">*vs.*<br>Waite etal.</span>
vs. *Willsmore*, 8 *Ter. Rep.* 528 ; *Sterrye* vs *Arden*, 1 *John.*
*Ch. Rep.* 261. Again, the defendants may claim as purchasers
under their mortgage deed. Perhaps it may be said, that the ca-
ses cited in support of the defendants' title, under the administrators
deed, are decisions upon the construction of the statute of the 26th
*Eliz.*, and that that statute is not in force here. The 27th *Eliz.*
it is true, has not been adopted in this state by legislative enact-
ment, but we consider it merely declaratory of the common law,
and in force here, without any such enactment.—*Vide Cadagan*
vs. *Rennett, Cowp. Rep.* 434 ; *Roberts on Conveyances*, 10, *n.*
The statute of the 13th *Eliz.* and 27th *Eliz.* it is said have been
adopted in many of the states without any legislative enactment,
upon the ground that they are merely declaratory of the com-
mon law. I do not know of any decision in this state adopting the
27th *Eliz.* ; but I see no reason why it should not be adopted
here, as well as in other states, as a part of *our* common law.—1
*Mass. Rep.* 60, 61. The common law of England was adopted
in this state in 1782 by statute ; and I suppose all the English
statutes then in force, which were merely declaratory of the com-
mon law, were also adopted.

BAYLIES, J., *delivered the opinion of the Court.*—It appears
that on the 19th May, 1830, William Ford, of Braintree, in Or-
ange county, possessed an estate of the value of $60,000, and was
then owing about $16,000 ; that *for love and natural affection
only*, the said William Ford then deeded lands of the value of
$1000, lying in said Braintree, to his daughter, *Clara*, who was
the wife of *Henry Brackett, jr.* ; that on the 16th July, 1830, a
flood came, and swept off $50,000 worth of said Ford's estate,
whereupon he was insolvent. At the time said Ford deeded the
land to his daughter, *Clara*, he was owing *Daniel Waite* about
$1000 on notes, dated 7th July, 1827 ; and to secure the pay-
ment of these notes, said Ford on the 28th July, 1830, mortgaged
the lands, which he had deeded to his daughter,to said *Waite ;* and
the question is, who has the better right to these lands, the
daughter, who claims by her deed, or *Waite*, who claims by
his mortgage. The county court charged the jury, " that said
*Waite* was to be viewed as a creditor of said Ford, whose debt

Orange,
February,
1832.

Brackett et ux.
vs.
Waite et al.

existed before said 19th of May, 1830, and that, as to such credʌ itors, the deed of said Ford, made *for love and natural affection only*, was void, though the grantor at the time was solvent, and had visible property amply sufficient to pay all his debts, if he afterwards became insolvent." To support this charge, the defendants rely on the case, *Reade, Administrator of Reade* vs. *Livingston et al.*, 3 *Johns.* 481. In that case, *Kent, Chancellor*, after remarking upon several English cases, says, " The conclusion to be drawn from the cases is, that if the party be indebted at the time of the voluntary settlement, *it is presumed to be fraudulent in respect to such debts, and no circumstance will permit those debts to be affected by the settlement, or repel the legal presumption of fraud.* The presumption of law in this case does not depend upon the amount of the debts, or the extent of the property in settlement, or the circumstances of the party. There is no such line of distinction set up, or traced in any of the cases. The attempt would be embarrassing, if not dangerous to the rights of the creditors, and prove an inlet to fraud. The law has, therefore, wisely disabled the debtor from making any voluntary settlement of his estate, *to stand in the way of his existing debts.* This is the clear, and uniform doctrine of the cases, and it is sufficient for the decision of the present case." If the law be as it is here stated, no well founded objection can be made to the charge of the county court. But it is believed by this Court, that the principles of law, relating to voluntary settlements, are not understood, in England, precisely as above expressed. In 1 *Roper's Husband and Wife, p.* 307–8, it is said, " The act of the 13th of *Elizabeth, c.* 5, does not make void *voluntary* settlements against *creditors*, but merely declares, that a fraudulent deed shall be void against them. Hence it seems to follow, that although a man be indebted at the time he made a voluntary settlement, yet it is no further void on that account, than as affording a *presumption* of fraud." " This principle will serve as a guide to the understanding of the cases, and the distinctions which have been made ; the conclusions to be drawn from which I shall endeavour to collect, and state them shortly.

" If the husband, when he makes the settlement, after marriage, upon his wife, be not indebted at the time, subsequent debts will not defeat it. Upon this point *Ld. Hardwicke*, in *Townshend* vs. *Windham.* 2 *Ves. Sen.* 11, thus expressed himself : " If there be a voluntary conveyance of real estate or chattel interest by one not indebted at the time, although he afterwards becomes indebt-

ed, if that voluntary conveyance was for a child, and no particular evidence, or badge of fraud, to deceive or defraud subsequent creditors, that will be good ; but if any mark of fraud, collusion, or intent to deceive subsequent creditors, appears, that will make it void, otherwise not ; but it will stand, though afterwards he becomes indebted."

ORANGE,
February,
1832.

Brackett et ux.
vs.
Waite et al.

" If the husband happen to be indebted at the time of making the settlement, the principle of *presumption* before stated, furnishes the following distinction :—If his debts be *considerable*, and the effect of the settlement would be, if substantiated, to defeat the creditors of their demands, then such settlement is void as fraudulent, under the act of the 13th of *Elizabeth.*

" But it would not be so, it is presumed, if the debts were of *inconsiderable* amount ; because their existence furnishes no presumption of the settlement having been made with an intent to deceive and defraud creditors ; and common sense would revolt at a decision, that a voluntary settlement made by a husband, having a rental of £5000 a year, should be void, if it happened, that when he made such settlement he was indebted in the trifling sum of £100. This point came under *Lord Alvanley's* consideration in *Lush* vs. *Wilkinson*, 5 *Ves. Jr.* 384.

" *Newland on Contracts, p.* 383, 4, 5, says : " I shall now return to the statute of 13th *Eliz.* It will be found by examining the cases on this statute, that there is another circumstance, which has been considered to be a badge of fraud ; I mean where a *voluntary* conveyance is made by a person *indebted at the time.* This is construed to be proof of fraudulent intention with respect to creditors, although the deed may be in consideration of blood or of natural love and affection. *Lord Coke*, in *Twyne's* case, says, when a man, being *greatly indebted* to sundry persons, makes a gift to his son, or any of his blood, without consideration, but only of nature, the law intends a trust between them."

" It is material, likewise, to remark, that to impeach a voluntary settlement made on a meritorious consideration, it seems to be necessary, that the person making it, not only should be indebted, but should be *insolvent* at the time. *Lord Alvanley*, in *Lush* vs. *Wilkinson*, 5 *Ves.* 384, says, " a single debt will not do ; every man must be indebted for the common bills for his house, though he pays them every week ; it must depend on this, *whether he was in insolvent circumstances at the time.*"

" And this is certainly the rational construction of the statute, on which we are commenting. For it was intended to prevent

ORANGE,
February,
1832.

Brackett et ux.
vs.
Waite et al.

conveyances of property, made with a design to defraud creditors. When, therefore, a person makes a voluntary settlement of his property, and is at the time in insolvent circumstances, as it must be obvious to him, he is doing an act which must deprive his creditors of the means of procuring the payment of their debts : this is a case, which plainly falls within the statute."

" But to say, that the mere circumstance of the person being indebted at the time, without reference to the comparative state of his debts, and of his means of paying them, shall be a sufficient proof (though the conveyance is, on a most meritorious consideration) of fraudulent intention, with respect to his creditors, is to assert, that a person, who, being seized of a landed estate in fee of £1000, settles, after marriage, on his wife a jointure of £30 a year, if he owes £30 at the time, and that sum only, shall be considered to make the settlement with a view to defraud his creditors. If *Lord Alvanley's* idea, therefore, be correct, it will be necessary to remember the sense in which the term " indebted" is used, when applied to these cases."

In the case of *Salmon* vs. *Bennett*,1 *Con. Rep.* 525,*Swift, Ch. J.*, gives the opinion of the court as follows : " Fraudulent and voluntary conveyances are void as to creditors ; but in the case of a voluntary conveyance, a distinction is made between the children of the grantor, and strangers. Mere indebtedness at the time will not, in all cases, render a voluntary conveyance void as to creditors, when it is a provision for a child in consideration of love and affection ; for if all gifts by way of settlement to children, by men in affluent and prosperous circumstances, were to be rendered void upon a reverse of fortune, it would involve children in the ruin of their parents, and in many cases might produce a greater evil than that intended to be remedied. Nor will all such conveyances be valid ; for then it would be in the power of parents to provide for their children at the expense of their creditors. Nor is it necessary, that an actual or express intent to defraud creditors should be proved ; for this would be impracticable in many instances, where the conveyance ought not to be established. It may be collected from the circumstances of the case. But in all cases, where such intent can be shown, the conveyance would be void, whether the grantor was indebted, or not. In order to enable parents to make a suitable provision for their children, and to prevent them from defrauding creditors, these principles have been adopted, which appear to be founded in good policy. Where there is no actual fraudulent intent, and a voluntary conveyance is made

ORANGE.
February,
1832.

Brackett et ux.
vs.
Waite et al.

to a child in consideration of love and affection, if the grantor is in prosperous circumstances, unembarrassed, and not *considerably* indebted, and the gift is a reasonable provision for the child, according to his state and condition in life, comprehending but a small portion of his estate, leaving ample funds unincumbered for the payment of the grantor's debts, then such conveyance will be valid against debts existing at the time. But though there be no fraudulent intent, yet if the grantor was considerably indebted and embarrassed at the time, and on the eve of a bankruptcy; or if the value of the gift be unreasonable, considering the condition in life of the grantor, disproportioned to his property, and leaving a scanty provision for the payment of his debts; then such conveyance will be void as to creditors."

*Kent*, chancellor, speaking of the above decision in Connecticut, says, "The court do not refer to authorities in support of their opinion, and, perhaps, they may have intended not to follow, strictly, the decisions at *Westminster Hall*, under the statute 13 *Eliz.* I can only say, that, according to my imperfect view of those decisions, (and by which I consider myself governed,) this case was not decided in conformity to them; but I make this observation with great defference to that court." *Reade* vs. *Livingston*, *(3 J. C. R.* 504.) But if I understand the elementary writers, *Newland* and *Roper*, on this subject, they do fully support the opinion delivered by *Swift, Ch. J.*, in the above case. And, in addition, the same principles are advanced by the Supreme Court of the United States in their opinion delivered in the case, *Hendee's Lessee* vs. *Longworth*, 11 *Wheat.* 213. In this case the court say : "A deed from a parent to a child, for the consideration of love and affection, is not absolutely void as against creditors. It may be so under certain circumstances; but the mere fact of being in debt to a small amount, would not make the deed fraudulent, if it could be shown, that the grantor was in prosperous circumstances, and unembarrassed, and that the gift to the child was a reasonable provision according to his state and condition in life, and leaving enough for the payment of the debts of the grantor. The want of a valuable consideration may be a badge of fraud, but it is only presumptive, and not conclusive evidence of it, and may be met and rebutted by evidence on the other side."

I consider, that the whole doctrine of the law, as to fraudulent conveyances under the statute of 13th *Eliz.* will apply to fraudulent conveyances under our statute, *ch. 32. s. 7, (Slade's Ed.)*

ORANGE,
February,
1832.

Brackett et ux.
vs.
Waite et al.

Now, if we apply the principles of law, as explained by the elementary writers, aforesaid ; and as recognized by the courts of law as aforesaid, to the facts in the case under consideration, we cannot but see, that these facts afford no ground for presumption of fraud in William Ford, at the time he executed his deed to his daughter, *Clara.* For at that time Wm. Ford was in prosperous circumstances—his estate was worth $60,000, and he owed only $16,000—his gift to his daughter, *Clara,* was a thousand dollars' worth of land, which left enough of the estate to pay all his debts, and $43,000 over and above. The gift was not unreasonable, and affords *no presumption,* that it was made to injure creditors. If the deed to the daughter was not fraudulent in the beginning, it was not made so by subsequent events ; such as the waters sweeping off $50,000 worth of the grantor's property, and rendering him unable to pay his debts. This Court is satisfied, that the county court in their charge, did not instruct the jury according to the principles of law. For this reason alone, we reverse the judgemedt of the county court, and grant a new trial. The plaintiffs to recover their costs at this Court.