JOHN DEWEY AND GREENLEAF WEBB *v.* JOHN & JAMES LONG.

*Ejectment. Resulting Trust. Equitable Interest. Fraud, &c.*

If a conveyance of land is made to one person, and the purchase money is paid by another, a resulting trust is thereby created, and the person who has the legal title, will hold the same for the use and benefit of the person paying the money; and if the transaction was had with fraudulent intent, the property will be held subject to be taken by the creditors of the person who paid the money for the land.

And where a conveyance was made, by the request of A., who had an interest in the land, to B., a son, he having paid certain debts for A., and at the time the conveyance was understood, and treated by A. and B. as an absolute conveyance, and A. had property sufficient to pay all his debts, and no fraudulent intent existed, *it was held,* that the conveyance would not be fraudulent or void, as to the subsequent creditors of A., even if the consideration was not to the full value of the property.

Where one person has paid the purchase money in whole or in part, and the deed is given to another and consequently the legal title to the land, *it was held,* that the levy of an execution, by a creditor, against the person paying the purchase money, would give the creditor, only that person's equitable interest, and to recover that, the action of ejectment cannot be sustained.

EJECTMENT for certain land in Guildhall, which was described in the declaration.

Dewey et al. *v.* Long et al.

Plea, the general issue, and trial by jury. The plaintiffs claimed title to the said land, by virtue of a recovery of a judgment in their favor, for $475 37 against the defendant, James Long; upon which judgment the plaintiffs took out execution and levied the same upon said land, and set the same off to satisfy said execution, on the 16th day of November, 1846. The said farm was purchased by the defendant, John Long, of Brickett & Thayer, and was deeded by them to the said John, on the first day of April, 1842, and the title of record has always so remained, and it was not claimed by the plaintiffs that James Long ever had any deed or record title to said farm. But the plaintiffs claimed that the said farm was purchased and paid for, either in whole or in part, with the money of James Long, and the deed thereof taken to John Long, to fraudulently cover up and conceal the property of James Long, so as to prevent the same from being taken by the creditors of James Long.

The plaintiffs offered evidence, tending to prove that previous to 1834, said James Long was the owner of a piece of land in Guildhall, No. 15, 2d Range; that said James was indebted to one Isaac Cummings in the sum of one hundred dollars, and being called on to secure said debt, he procured the defendant John Long, who was his son, and one John Bothel 2d, to execute to said Cummings two notes of fifty dollars each, for the said James's debt, and to secure the said Bothel for signing said notes, said James, on the 16th day of January, 1843, gave a deed of said lot No. 15, to said Bothel; one of these notes to said Cummings, it was admitted, was paid by John Long; but the plaintiffs claimed, that the other was paid by said James, and said John claimed that he paid both of said notes, or furnished money to pay both. After said notes were paid to said Cummings, and on the 23d day of April, 1836, said Bothel, by request of said James, deeded said lot No. 15 to said John, and the title remained in him till 1842, when said John sold said lot to one Rowell for $200, and in the spring of 1843, about $137 had been received of said Rowell by one Oramel Crawford, agent for said John, and was by him paid towards the purchase money due for the farm bought of said Brickett & Thayer, the purchase money being $600.

That said John became twenty-one years of age in 1833, and soon after went to the state of Massachusetts, where he has ever since resided. The said lot No. 15 was a back lot, and was occu-

pied for a pasture, but it did not appear that said John had ever occupied, or done anything upon it, except that in 1838 or 1839, he paid about forty dollars for repairing a barn upon it. The evidence also tended to prove, that in 1836, James Long had sufficient property aside from this piece of land, to pay all the debts he then owed, and the debt of the plaintiffs, did not accrue till some years subsequent to that time.

A large amount of evidence was introduced, on the part of the plaintiffs, tending to prove that James Long had property as late as 1842, and that the same went into said farm. And also a large amount of evidence, on the part of the defendants, tending to prove that in 1840, and 1841, James Long and his family became poor and destitute, and that said farm was purchased by John Long with his own means, for the purpose of providing a home for his father's family; but no question was reserved in relation to this part of the case, or upon the charge of the court as to the said lot No. 15, and evidence relating thereto.

The court charged the jury generally, as requested by the plaintiffs : and instructed them, that if the farm sued for was purchased, and paid for, with the money or property of James Long, or if any substantial part of the purchase money belonged to him, and the deed of the farm was taken to John Long, for the purpose of covering up the property of James Long, and to keep the same out of the reach of his creditors, then the same was fraudulent and void, as against his creditors, and they could levy upon and hold the same, as the property of James Long.

The plaintiffs requested the court to charge, in relation to said lot No. 15, that John Long had no interest in said farm, except as a mortgage security, for such sum as he paid to said Cummings, on the said notes, and that if he sold the same for a greater sum, the excess would belong to James Long, and if the same or any part thereof went toward paying for the farm in question, it created an attachable interest therein, in the said James Long. The court, upon this part of the case, instructed the jury, that if the deed of said lot No. 15, in the hands of John Long was understood and treated, as between him and James Long to be merely a security for what John Long paid Cummings, and he sold the same for a greater amount, the surplus would belong to James Long, and if the same went into the farm in question, with the design to keep

the same from James Long's creditors, it would bring the case within the rule above laid down. But, that if from the evidence the jury found that the same was understood and treated, as between John and James Long, as being an absolute conveyance of the whole interest and title to John Long, and James Long had at the time sufficient property to pay all his debts, and the same was not done with any fraudulent intent, the conveyance would not be fraudulent or void as to the subsequent creditors of James Long, even if the consideration was insufficient and not to the full value of the property. The jury returned a verdict for the defendants.

To so much of the charge of the court as is above last stated, the plaintiffs excepted.

———— for plaintiffs.

*Burnes & Fletcher* for defendants.

The opinion of the court was delivered by

ISHAM, J. To sustain this action, it is necessary for the plaintiffs to prove in themselves the legal title, and right of possession to the premises in question, and that the defendants wrongfully withheld the same from them. For this purpose, the plaintiffs gave in evidence the record of a judgment in their favor against James Long, upon which execution was duly issued and levied upon the land, for which this suit is brought. No objections have been urged against the validity of the judgment, or the levy of the execution. We are therefore to treat them as valid, and sufficient to transfer to the plaintiffs, whatever right and interest James Long had in the premises, at the time of the levy.

It appears from the case, that the premises were owned by Messrs. Brickett & Thayer, and were conveyed by them to John Long, on the first day of April, 1842, and that James Long never had any record title, or deed of the premises. It is insisted, however, that this purchase from Brickett & Thayer, was in reality made by James Long, and that the purchase money was paid by him from his own money, and that the deed was executed to John Long, for the purpose of keeping the property from the creditors of James Long, against whom the plaintiffs have recovered this judgment. Upon this question, the parties respectively introduced their evi-

dence for the consideration of the jury. It is not within the province of this court to examine the evidence, which is detailed in the exceptions, for the purpose of seeing whether the jury have come to a just conclusion. Our investigation is confined to the legal questions arising in the case, and to the inquiry whether the case was properly submitted to their consideration.

The principle is clearly correct, that if a conveyance of land is made to one person, and the purchase money is paid by another, a resulting trust is thereby created, and the person who has the legal title, will hold the same for the use and benefit of the person paying the money; and if the transaction was had with fraudulent intent, the property will be held subject to be taken by the creditors of the person who paid the money for the land. If James Long paid the money, for the land conveyed to John Long, these plaintiffs, as his creditors, can in some way enforce their claim against the property so conveyed and purchased.

The jury, under the charge of the court, have found that there was no fraud in fact, and that the deed to John Long was not executed to keep the property from the creditors of James Long. Of the charge of the court, the plaintiffs have no reason to complain. It gave them the full benefit of every fraudulent consideration urged in the case, and the finding of the jury is conclusive.

The exceptions detailed much of the testimony, on the question whether the purchase money or any portion of it was paid by, and belonged to, James Long; and it was insisted, that the money realized on the sale of lot No. 15, over and above the amount paid by John Long, was the money of James Long, and that that amount, having been paid as part of the purchase money, gave James Long an interest in the premises to that extent. The court charged the jury, that if the deed of lot No. 15, conveyed to John Long by the request of James Long, was understood and treated by them as a security merely, for the money paid by John Long, on the Cummings notes, and he sold the same for a greater amount, the surplus would belong to James Long; but if, as between James and John Long, the conveyance was understood and treated as an absolute conveyance, and James Long had at the time sufficient to pay all his debts, and no fraudulent intent existed, the conveyance would not be fraudulent or void as to the subsequent creditors of James Long, even if the consideration was not to the full value of the

Dewey et al. *v.* Long et al.

property. In considering the propriety of the charge, we are to bear in mind, that as between James and John Long, the relation of parent and child existed, and that the relation of itself, is what is termed a good consideration. The jury under the charge, have found that the deed to John Long was intended and treated as an absolute conveyance, and that James Long, at the time of the conveyance, was possessed of other property sufficient to pay his debts, and that no fraud was intended. Under these facts, the case falls within the principle decided by this court, in the case of *Brackett et al.* v. *Waite et al.*, 4 Vt. 389. In that case the court remarked, "That " where one, in prosperous circumstances, and not much embarrass- " ed with debts, in consideration of natural love and affection, makes " a voluntary conveyance of a portion of his estate, unaccompanied " by fraud, and retaining sufficient to pay his debts ; such convey- " ance is good and valid, as against a subsequent mortgage given to " secure a debt existing previous to such voluntary conveyance ; " and that such conveyance will not be defeated, by subsequent " events rendering the grantor insolvent." The application of this principle to the facts as found by the jury in this case, leads to the conclusion, that no trust was created in favor of James Long, in the conveyance to John Long of the property, on which the plain- tiffs have levied their execution. We see no error, therefore, in any of the matters, on which exceptions have been taken.

There is another objection, which is regarded as fatal to the plaintiffs' recovery in this case. James Long, against whom the judgment was rendered, had not the legal title to the premises up- on which the execution was levied. That title was in Brickett & Thayer, and passed from them to John Long. If James Long had paid the purchase money in whole or in part, his right and interest in the premises was equitable and not legal. The legal title was in John Long, and the levy of the execution against James Long, would only give the plaintiffs his equitable rights ; and to recover that, the action of ejectment cannot be sustained ; for at law, the legal title will prevail over the equitable interest. The remedy of the plaintiffs is in equity. For this purpose the attachment and levy of the execution, laid a proper foundation for a court of equity, on a creditor's bill, to interpose and decree a conveyance of the

XXV.     37

property to the creditor, whose execution is thus extended; and this, we think, is the only mode of relief.

The judgment of the County Court must be affirmed.