Hon. ASA O. ALDIS,
Hon. JOHN PIERPOINT, } Assistant Judges.
Hon. ASAHEL PECK,

---

RUFUS BUCK *v.* LUTHER GILSON AND OTHERS.

*Trespass. Husband and Wife.*

The mere fact that a husband signed a note with his wife, given for money to pay in part for land deeded to the wife, when it does not appear that any reliance was, or could be placed upon his paying it, and the note was secured wholly by mortgage of her lands, and those of her relatives, is not enough to show that he had any real or equitable interest in the premises that could be taken by his creditors.

If a party having recovered judgment against another, levy execution upon land deeded to his wife, the husband never having held the title, the former would not by his levy acquire a legal title so that he could maintain ejectment or trespass *qu. cl.* upon it, whatever interest the husband may have had in the land, or whatever design in having the wife hold the title.

TRESPASS *quare clausum* and for a quantity of hay. Plea, the general issue. Trial by the court, December Term, 1864, BARRETT, J., presiding.

The farm or close named in the declaration, on which the grass or hay sued for grew, was deeded to Lemira Gilson, the wife of the defendant Luther Gilson, by W. S. A. Morse, by deed dated April 6th, 1850. At the time of this conveyance there was a mortgage upon the farm of about $600., and the said Lemira took the deed subject thereto. The sum of $535. was hired of one Sarah Rice to pay towards the purchase of said farm, and Lemira and Luther Gilson executed their note therefor, and joined in executing a mortgage of said farm, and also with a brother and step-mother of said Lemira, joined in executing a mortgage deed of a small house and lot, the property or estate of the father of Lemira, then deceased, whose estate was then in a course of settlement; all of which was to secure the payment of the $535. to the said Sarah Rice. The said small house and lot was then worth about $350. Luther Gilson, the husband of Lemira, never had any legal title to said premises, nor did he ever pay anything towards the purchase money. Soon after the purchase of said farm Luther and Lemira Gilson moved on to and carried on the same, and have continued to do so to the present time. October 6th, A. D. 1851, the plaintiff recovered a legal judgment against the said Luther Gilson for $44.66 damages, and $4.75 costs of suit, and execution was issued thereon December 29th, 1851, which was duly levied on said farm in satisfaction therefor, and the return thereof duly recorded. August 1st, 1852, the plaintiff entered upon said farm and mowed a quantity of grass growing thereon, which the defendant and his men raked up and converted to the defendant's use, for which this suit is brought.

The county court rendered judgment for the defendant,—to which the plaintiff excepted.

*S. Fullam*, for the plaintiff.

*J. F. Deane* and *L. Adams*, for the defendants.

POLAND, Ch. J. In order to enable the plaintiff to maintain this action of trespass *quare clausum*, he must have a title to the premises upon which the alleged trespass was committed, and his title to the hay sued for depended upon his title to the land.

The plaintiff claimed title by virtue of levy of execution in his favor against the defendant upon the land. If the defendant was the owner of the land, the levy, which is conceded to be regular in form, conveyed his title to the plaintiff.

If the land belonged to the defendant's wife, and the defendant's only interest was that of a husband in his wife's land, then it was not liable to attachment or levy by his creditors, and no title was derived by the plaintiff from his levy thereon for the debt of the husband.

The land was conveyed solely to the wife, so that the legal title was in her, and not in the husband. But the plaintiff claims that the defendant in fact had an interest in the land, because he was legally holden for the payment of the note given for the $535. borrowed to make payment for it. The agreed case shows that he signed the note with his wife for the money so obtained, and joined with his wife in a mortgage deed of the premises in question, and also in a mortgage with her and her brother and step-mother of certain other premises, to secure the payment of the note.

His joining in the mortgage of these premises with his wife, has no tendency to show any interest or claim of interest in them in him, as his wife could not make a valid mortgage without joining her husband.

The fact that he signed the note with her, we think has very little tendency to show that it was expected he would pay it, or that any reliance was placed upon the security of his name. The party loaning the money might have supposed that it was necessary to have his name to the note as well as to the mortgage. The fact that the payment of the note was wholly secured by mortgage of these premises, the title to which was in the wife alone, and of other premises belonging wholly to the wife and her relatives, in which the husband had no interest, shows quite clearly that it was regarded as a transaction of the wife, and not one for the benefit of the husband, and that it was not expected he would pay the note, or have any interest in the premises.

He had paid nothing whatever toward the premises, and the mere fact that his name was on the note given for money to pay in part for the land, when it does not appear that any reliance was, or could

be placed upon him, and the note was secured wholly by mortgage of her lands, and those of her relatives, is not enough to show that he had any real or equitable interest in the premises, that could be taken by his creditors.

But if this were otherwise, and it were shown that he paid the whole consideration, and the deed was taken to his wife for the purpose of keeping it out of the reach of his creditors, the plaintiff did not by his levy acquire the legal title, so that he could maintain either ejectment or trespass, *quare clausum*, upon it. If the defendant was the real owner of the land, and the title held by his wife was merely in trust for him, his interest was liable to be taken by his creditors by levy. But a levy and set-off of his equitable estate would convey to the creditor only the equitable estate, and the proper course must be taken to obtain the legal title, before an action at law can be supported upon the title. As the legal title was never in the defendant, the case stands differently from what it would, if the defendant had once been the legal owner, and had conveyed it away in fraud of his creditors. In such case the creditors may treat the deed from him as void, and the legal title as remaining in him. As the legal title was never in the defendant, if the deed to his wife was merely in trust for him, and was made so fraudulently as to his creditors, it could not have the effect to convey the legal title to the defendant. This was expressly held in *Dewey et al.* v. *Long*, 25 Vt. 564.

These views of the case render it unnecessary to decide as to the effect of the plaintiff's entry upon the defendants' possession and cutting the grass.

Judgment affirmed.