FRANCES FRENCH *vs.* EBENEZER R. HOLMES,
and
CHARLES F. FRENCH, by next friend, *vs.* SAME.

Oxford.   Decided August 4, 1877.

*Fraudulent Conveyance.*

A voluntary gift by a husband to his wife, if he be indebted, or by a father to
his son, is *prima facie* fraudulent as to creditors.

This may be rebutted by the circumstances of the case and by proofs.

The question whether the gift or conveyance is fraudulent or not is a question
of fact to be determined by the jury.

The value of the gift is material as to the question of fraud.

It must at least be of sufficient value to pay for the expense of its sale by an
officer on execution.

The wife stands in no worse relation to a gift from her husband as to cred-
itors than would any other donee from him of the same gift.

ON EXCEPTIONS AND MOTION.

REPLEVIN in two cases tried together, wherein the defense was
in one case that the sheep and lambs, in the other, the cow, were
the property of John S. French, from whom they were taken by
the officer on execution against him in favor of the defendant,
and that they were not the property of the plaintiffs, the wife and
son of the said John S. French; that the pretended gift by
him to them of the lamb and calf, the origin and progenitor of
those replevied, was fraudulent as to creditors.   One of the posi-
tions of the plaintiffs was that the property was valueless to credi-
tors when given.   Upon this position the presiding justice in-
structed the jury that it was not a question of value but of prop-
erty.   The verdict was for the defendant in both cases, and the
plaintiffs alleged exceptions, which in the opinion appear.

*J. J. Perry*, for the plaintiffs.

*A. A. Strout & G. F. Holmes*, for the defendants.

APPLETON, C. J. These are actions of replevin. The first is to recover a cow four years old, alleged to be the property of the plaintiff. The second to recover four sheep and two lambs, alleged to be the property of the plaintiff, a minor.

The pleas were the general issue with brief statements, that the cow, sheep and lambs named in the replevin suits at the time of the alleged taking were the property of one John S. French, and that they were delivered by said French to one Stacy, a deputy sheriff, who took the same on execution in favor of said Holmes against said French, to be sold on execution according to law.

The writs are dated February 19, 1875. By the agreement of parties the actions were tried together.

The plaintiff, in the first named action, introduced evidence, (and the same was not contradicted) to prove that in June, 1871, her husband, John S. French, was the owner of a cow, which dropped a calf; that owing to the lateness of the season, he did not consider it of any value and was about to kill it, when the plaintiff stepped in and informed her husband that she would take and raise the calf by her own labor, and at her own expense, provided she could have it for her own. To this proposition her husband assented.

The plaintiff further testified that she did by her own labor raise said calf until it grew up to be a cow, and that it is the same replevied in this action.

The plaintiff likewise introduced evidence tending to show that this cow from the time she first took possession of it to the time she was taken away by the defendant, was kept and fed both summer and winter from the products of land owned by the plaintiff in her own right and without expense to her husband.

In the second case, it was proved by the plaintiff, a young man of sixteen years of age, and son of John S. French, that in the spring of 1868, a lamb disowned by its mother, was found in the pasture of his father; that his father gave the lamb to him as his own provided he could make it live and raise it; that said lamb

was nursed and raised by him as a "cosset" lamb ; that from this lamb and its progeny came the sheep and lambs replevied in this suit; that the proceeds and income of these sheep had always been received by him and appropriated in purchasing school books, tuition, &c.

The defendant in defense introduced an execution, recovered before the justices of the supreme judicial court, held at Paris, on the first Tuesday of December, 1874, in which said Holmes was plaintiff and said John S. French was defendant, for $503.57 debt or damage, and $16.19 costs of suit, and upon which an execution issued.

The writ upon which the judgment was founded and the execution issued, was dated November, 14, 1873, and contained three counts, one on a promissory note of said French, dated March 1, 1868, payable to the plaintiff for one hundred dollars and interest. The second was on a note dated January 11, 1871, signed by said French and payable to the plaintiff, and for the sum of $129.69 with interest at nine per cent. The third count was on a note signed by the defendant and payable to the plaintiff, dated January 11, 1872, for $172.43 on demand with interest at nine per cent.

Upon this state of the case, the presiding justice ruled that if the defendant by the union of debts precedent and subsequent to the gifts sought to be impeached, had voluntarily placed himself in the condition of a subsequent creditor, and if a subsequent creditor, then he could not impeach the conveyance or gift from the debtor, John S. French, to his wife or son.

This ruling was in entire accord with the decisions of this court.

The defendant then offered and was permitted to prove against the seasonable objections of the plaintiff's counsel, that the note on the second count was given for the balance of principal and interest on a note given by said French to the defendant about fifteen years since, for fifty dollars and interest at the rate of twelve per cent., and that the note in third count was given for other notes due from said French to him, and that the new notes were for the principal and interest due on said notes with the accrued interest at the rates specified in the notes taken up.

It is urged that the admission of this evidence is adverse to the decision of this court, in *Bangor* v. *Warren*, 34 Maine, 324. But as the exceptions must be sustained on other grounds, it becomes unnecessary to examine and determine that question.

The presiding justice instructed the jury that a father in possession of personal property of his own, which is liable to be taken on execution to pay his debts, cannot "give such property to a minor child so that the gift shall be valid against an existing creditor."

When a creditor contests a gift, sale or conveyance of his debtor as fraudulent, the question of fraud is a matter of fact to be determined by the jury. It was held in *Thacher* v. *Phinney*, 7 Allen, 146, that in case of a voluntary conveyance, the question should be submitted to the jury to determine whether or not it was made with an intention to defraud creditors. Whether a voluntary conveyance is in good faith or fraudulent as to creditors, is a question of fact for the jury, upon consideration of all the circumstances attending it. *Pomeroy* v. *Bailey*, 43 N. H. 118. In the case of a voluntary conveyance, as much as in other cases, the question is as to actual fraud, which must be passed upon by the jury. *Jackson* v. *Peek*, 4 Wend. 300, 301. Whether the deed in *Jackson* v. *Timmerman*, 7 Wend. 436, was fraudulent, "was," says Sutherland, J., "in this, as in all other cases, a question of fact for the jury. There is no such thing as fraud in law, as distinguished from fraud in fact." The presiding justice having ruled that the voluntary deed, which was contested, was void in law, and having withdrawn the consideration of the question of fraud from the jury, a new trial was ordered.

Now the ruling in question withdrew the question of fraud from the jury. The gift, sale or conveyance, though voluntary, is valid between the parties. It may be valid as to creditors. Whether it be so or not depends upon the condition of things at the date of such gift, sale or conveyance, not on what may subsequently happen. *Brackett* v. *Waite*, 4 Vt. 389. According to the instruction, no gift by a father to a son, however rich the father, however trifling the value of the gift, "is valid against an existing creditor." The attendant and surrounding circumstances are ignored. The rule laid down precludes all investigation, all expla-

nation.   The broad proposition is made that every gift is *per se* invalid as against an existing creditor.   A valid gift could not be made, however rich the giver, if he should happen to be indebted. No evidence is receivable to establish its validity.   The ruling stamps with fraud a transaction, which no reasonable man could regard in fact as fraudulent.   The jury must have understood the rule as inexorable and inflexible, for no jury could be found which would declare the gift of a feeble lamb, just born and disowned by its mother, by a father to his son, as a fraud upon and invalid as against creditors, unless compelled thereto by instructions of the most peremptory character.

The ruling of the presiding judge was in other respects adverse to the entire weight of judicial authority.   In *Thacher* v. *Phinney*, 7 Allen, 146, Bigelow, C. J., says:   "A voluntary conveyance is not *per se* fraudulent as against creditors.   No doubt, such a conveyance, by a person who was deeply in debt, especially of a large and substantial portion of his estate, would be very strong evidence of a fraudulent intent.   But such deed is not necessarily void."   "The better doctrine seems to us to be," remarks Bigelow, C. J., in *Lerow* v. *Wilmarth*, 9 Allen, 382, "that there is, as applicable to voluntary conveyances made on a meritorious consideration, as of blood and affection, no absolute presumption of fraud which entirely disregards the intent and purpose of the conveyance, if the grantor happened to be indebted at the time it was made, but that such a conveyance under such circumstances affords only *prima facie* or presumptive evidence of fraud, which may be rebutted and controlled."

This view of the law is fully affirmed in New Hampshire, in an elaborate opinion of Bellows, J., in *Pomeroy* v. *Bailey*, 43 N. H. 118.   In *Salmon* v. *Bennett*, 1 Conn. 525, Swift, C. J., says that mere indebtedness will not render a voluntary conveyance void as to creditors, where it is a provision for a child in consideration of love and affection.   To the same effect is the decision of the supreme court of Vermont, in *Brackett* v. *Waite*, 4 Vt. 389.   So, in *Hinde's lessee* v. *Longworth*, 11 Wheat. 199, Thompson, J., in delivering the opinion of the court, says, "a deed from a parent to a child, for the consideration of love and affection, is not absolutely

void as to creditors. It may be so under certain circumstances; but the mere fact of being in debt to a small amount, would not make the deed fraudulent, if it could be shown that the grantor was in prosperous circumstances, &c. The want of a valuable consideration may be a badge of fraud, but it is only presumptive and not conclusive evidence of it, and may be met and rebutted by evidence on the other side."

In *Mateer* v. *Hissim*, 3 Penn. 164, it was said by Huston, J., in delivering the opinion of the court, that the Stat. 13 Eliz. c. 5, does not render void a conveyance made by a man simply because he is indebted. There must be a debt bearing some proportion to the property retained, which may render its payment doubtful. Whether it is fraudulent or not is for the jury. *Chambers* v. *Spencer*, 5 Watts. Pa. 404. Under the statute of Elizabeth voluntary conveyances to children as such are not absolutely void. *Smith* v. *Reavis*, 7 Ired. 341. In *Arnett* v. *Wanett*, 6 Ired. 43, the court commenting on the case of *O'Daniel* v. *Crawford*, 4 Dev. (N. C.) L. 197, which had been cited, say that it does not establish the doctrine that a voluntary gift is void by the common law against all debts of the donee existing at the time. In *Kehr* v. *Smith*, 20 Wall. 31, these views are fully affirmed as being in entire accord with the weight of judicial authority.

The latest English decisions are in accordance with these views. In *Kent* v. *Riley*, L. R. 14 Equity cases, 190, it was held that in the absence of actual intent to defeat, delay or hinder creditors, a voluntary settlement, made by a seller in embarrassed circumstances, but having property not included in the settlement ample for payment of the debts owing by him at the time of making it, may be supported against creditors, although debts due at the date of the settlement may to a considerable extent remain unpaid. In other words, the conveyance though voluntary is not to be regarded as *per se* fraudulent as to existing creditors. Indeed in that case the counsel opposing the settlement admitted "that the mere fact of a man owing a few debts at the time he makes a voluntary settlement will not afford sufficient ground for setting aside a deed."

The ruling given by the presiding justice was based upon and is in accordance with the opinion of Chancellor Kent, in *Reade* v.

*Livingston*, 3 Johns. Ch. 481, 500, in which he says : "The conclusion to be drawn from the cases is, that if the party be indebted at the time of the voluntary settlement, it is presumed to be fraudulent in respect to such debts, and no circumstances will permit those debts to be affected by the settlement or repel the legal presumption of fraud. The presumption of law, in this case, does not depend upon the amount of debts, or the extent of the property in settlement, or the circumstances of the case. . . The law has therefore wisely disabled the debtor from making any voluntary settlement of his estate, to stand in the way of his existing debts." But the reasoning of Chancellor Kent does not apply to a case like the present.

It relates to the settlements of estates, not mere gifts almost valueless, and by which the creditor would neither be hindered, delayed or defrauded. Its language excludes the consideration of all the circumstances attending the gift. It stamps with the mark of fraud any gift or conveyance, however inconsiderable its value, so that a millionaire, if in his prosperity, he should make a present, and subsequently his riches should take to themslves wings and fly away, the gift would be available to any one who happened to have been a creditor at the date of such gift. It creates a lien upon all the property of a man, so that if he owes a debt notwithstanding his solvency, he can make no gift, which may not thereafter in case of misfortune, be defeated. Now the extreme doctrine, as we have seen, has been repudiated by the clear weight of judicial authority. In New York, the case of *Reade* v. *Livingston* was referred to in *Seward* v. *Jackson*, 8 Cow. 406, and overruled. In delivering his opinion, Chancellor Jones says: "I should hesitate to act upon the principle, that a voluntary deed to children is absolutely void, as against creditors having debts owing to them at the time, and that no facts or circumstances can be sufficient to repel the legal presumption of fraud." The conclusion, reached by a majority of the court of errors, was that a conveyance or settlement, in consideration of blood and natural affection though by one indebted at the time, is *prima facie* only, and not conclusively fraudulent. The doctrine of this case has ever since been recognized as the law of New York. Chancellor Walworth so lays down the law in *Bank of U. S.* v. *Housman*, 6 Paige, 526. In

*Holden* v. *Burnham*, 63 N. Y. 74, it was held that a voluntary conveyance by a husband, through a third person, to his wife, is not necessarily or presumptively fraudulent; the want of consideration is simply a circumstance bearing upon the question of fraud, which is a fact for the jury.

It may be regarded as established law that mere indebtedness is not sufficient to render a voluntary conveyance void. Consequently a man, though indebted, may make a valid gift. Whether it is fraudulent or not, is to be determined by the jury upon a full knowledge of all the facts and the circumstances of the case.

But this ruling of the presiding judge forbade all explanation, for if a father could not make a gift so as to be valid as to creditors it would be idle to offer explanations, or to endeavor to establish the good faith of a gift which could not legally be made. It would be to attempt an impossibility.

2. The counsel for the plaintiff requested the court to instruct the jury (1) "that a gift to a wife by a husband, to be invalid as to the creditors, must be of some pecuniary value to such creditors. (2) that it was for the jury to find in these cases, whether the calf or the lamb, at the time of the gifts, was of any pecuniary value to such creditors; and if they were not, then the plaintiffs were entitled to their verdict."

The presiding justice declined to give the requested instructions, in the following words. "I decline so to instruct you. It is not a question of value, but of title."

This was a case, where the question was of fraudulent intent on the part of the donor at the time of the gifts. They could not be regarded as fraudulent if from their almost infinitesimal value the rights of the creditor would not thereby be impaired. The defendant's claim is that the voluntary gift by a father to a child, of a lamb just born, and which the mother refused to recognize was *per se* conclusive proof of a fraudulent intent on the part of the father to defraud his creditors, which no amount of evidence could disprove. If the lamb were attachable and attached, it would not have sold for the fees of the officer making the sale on execution, much less would it for the costs of obtaining the judgment upon which the execution would issue. If exempt and therefore not attacha-

ble, it was clearly no interference with the rights of creditors. Now could such a gift hinder, delay or defraud creditors? The fraudulent intent is to be collected from the comparative value and magnitude of the gift. Can any one believe the existence of a fraudulent intent? "Trivial gifts," observes Marshall, C. J., in *Hopkirk* v. *Randolph*, 2 Brock, 140, "made without any view to creditors, with intentions obviously fair and proper, do not seem from his language (referring to the opinion of Hardwick, Ch. in *Russell* v. *Hammond*, 1 Atk. 13) to have been on the mind of the judge. . In *Taylor* v. *Jones*, 2 Atk. 600, the master of the rolls said : 'I look upon it as being a standing rule, as to creditors, for a valuable consideration that it, (referring to a voluntary settlement after marriage,) is always looked upon as fraudulent and within 13 Eliz. c. 5.' "This expression," continues Marshall, C. J., "is a very comprehensive one; but it is applied expressly to a family settlement, not to an inconsiderable gift, and is used in a case in which the settler reserved to himself an interest for life." In the case under consideration the gifts were of two negro girls and a riding horse. "They," continued the Chief Justice, "do not differ much from wedding clothes, if rather more expensive than usual, from jewels, or an instrument of music, given by a man whose circumstances justified the gift. I have never known a case in which such gifts, so made, have been called in question. These gifts come, I think, completely within that class of presents, which, according to the case reported by Ambler, (*Patridge* v. *Goss*, Amb. 596) ought to be excepted from the general rule in favor of creditors." The gift of the waiting maids was regarded as clear, but there is an intimation of doubt as to that of the horse, but on the whole the court sustained both, affirming the general doctrine that there is no inflexible rule declaring all voluntary gifts are fraudulent as to creditors, without regard to the attendant circumstances. Bump on Fraudulent Conveyances, 289, *et seq.*

3. The principles and rules applicable to the gift of the lamb apply with increased force to the calf the debtor was about killing, but which he gave the wife, by whom and on whose farm it was kept and fed without expense to him. In this case it is obvious that the only interest the creditor can equitably have, (if he have

any whatsoever) is in the young calf as its value was at the time when the debtor was about to kill it. He certainly has none in the increased value arising from the care and the feeding of the calf by the wife on her own land.

But it is claimed that by R. S., c. 61, § 1, which provides that "when payment was paid for property conveyed to her from the property of her husband, or it was conveyed by him to her without a valuable consideration made therefor, it may be taken as the property of her husband to pay his debts contracted before such purchase."

The meaning of this section is obvious. It was the object of the act to protect the wife. The husband may make a gift to his wife. The statute implies it. The gift is as valid if made to the wife as if made to any one else. This must be the law, else the result will be that there is difference between a gift to a wife and to a stranger, and that, too, in a statute specially enacted for the protection of wives in the control and enjoyment of their estates.

The gift from the husband to the wife is valid unless fraudulent as to existing creditors. The general principles governing sales and conveyances fraudulent as to creditors are thus specifically made applicable to sales and conveyances from the husband to the wife.

By recurring to the original act of August 2, 1847, c. 27, § 2, this will be made clear. By that section it was provided that "the said first section shall be subject to the proviso, that if it shall appear that the property so possessed, being purchased after marriage, was purchased with the money or other property of the husband, was conveyed by him to the wife directly or indirectly, without adequate consideration and so that the creditors of the husband might thereby be defrauded, the same shall be held for the payment of the prior contracted debts of the husband." "This," as Wells, J., says, in *Johnson* v. *Stillings*, 35 Maine, 427, "in case of fraud, loads the property transferred with the prior debts of the husband," but not otherwise. In the revision of 1857, the words, "so that the creditors of the husband might thereby be defrauded," are omitted as unnecessary. "The statute," says Shepley, C. J., in *Davis* v. *Herrick*, 37 Maine, 397, "was intended to allow a husband to pay for property conveyed to his wife, with his own money

or property, and to allow his wife to hold it, unless the creditors then existing of the husband should thereby be defrauded." The same view after the revision, was held in *Winslow* v. *Gilbreth*, 50 Maine, 90, 94, the court remarking that "the statute authorizes the wife to take a conveyance, and her rights, under it, are entitled to the protection afforded other grantees." In *Randall* v. *Lunt*, 51 Maine, 246, it was held that a husband, though insolvent, might convey land to her in payment of his note to her, provided there was no intent to hinder, delay or defraud creditors.

It is thus seen that the wife's position as a donee from her husband differs in no respect from that of any other donee of his.

The rulings of the court, as we have seen, were erroneous.

The verdict was manifestly against evidence, for no man can believe that the gifts in question, almost utterly valueless as they are, were made with the intent to hinder, delay or defraud creditors; but whether they were so or not, the jury were precluded by the inexorable rule of law laid down for their guidance from considering or determining the question of fraud.

*Motion and exceptions sustained.*

DICKERSON, DANFORTH, PETERS and LIBBEY, JJ., concurred.
VIRGIN, J., concurred in the result. BARROWS, J., dissented.